UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| K.F., a minor by and through her Guardian Ad Litem BRENDA JEAN F.,[1] <br><br>Plaintiff, <br><br>v. <br><br>ANDREW M. SAUL,[2] Commissioner of Social Security, <br><br>Defendant. | Case No. 2:19-cv-04860-MAA <br><br>**MEMORANDUM DECISION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER** |

On June 4, 2019, a Complaint was filed on behalf of Plaintiff seeking review of the Social Security Commissioner's final decision denying her application for Supplemental Security Income pursuant to Title XVI of the Social Security Act. This matter is fully briefed and ready for decision. For the reasons discussed

---

[1] Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] The Commissioner of Social Security is substituted as the Defendant pursuant to Federal Rule of Civil Procedure 25(d).

below, the Commissioner's final decision is affirmed, and this action is dismissed with prejudice.

## PROCEDURAL HISTORY

On September 23, 2015, an application for Supplemental Security Income was protectively filed on behalf of Plaintiff, a child under age 18, alleging disability beginning on March 7, 2007. (Administrative Record ("AR") 178-84.) Plaintiff alleged disability due to chronic migraine headaches. (AR 208.) After her applications were denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 88-89.) At a hearing held on June 18, 2018, at which Plaintiff's mother appeared with counsel, ALJ Robert Freedman heard testimony from Plaintiff's mother and a medical expert. (AR 33-48.)

In a decision issued on July 11, 2018, the ALJ denied Plaintiff's application after making the following findings pursuant to the Commissioner's three-step evaluation for determining disability in children. (AR 15-28; *see* 20 C.F.R. § 416.924.) Plaintiff, a school-age child on the date the application was filed, had not engaged in substantial gainful activity since the September 23, 2015 application date. (AR 18.) She had the severe impairment of migraines. (*Id*.) She did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled the requirements of one of the impairments from the Commissioner's Listing of Impairments. (AR 18-28.) Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act. (AR 28.)

On April 8, 2019, the Appeals Council denied Plaintiff's request for review. (AR 1-3.) Thus, the ALJ's decision became the final decision of the Commissioner. Plaintiff filed the Complaint herein on June 4, 2019.

///

## DISPUTED ISSUES

1. Whether the ALJ improperly dismissed the opinions provided by the Plaintiff's treating physicians.

2. Whether the ALJ failed to properly consider the testimony provided by the Plaintiff's mother.

(Joint Stipulation ("JS"), at 2.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's final decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's interpretation must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

## DISCUSSION

**A.  Treating Physician's Opinion (Issue One).**

In Issue One, Plaintiff argues that the ALJ did not provide sufficient reasons to reject the opinions of treating physicians James Kim, M.D., and Paul Round, D.O., both at Antelope Valley Community Clinic ("AVCC"). (JS, at 2-7, 11-13.)

3

1. **Legal Standard.**

    a. **Determining disability in children.**

Once an ALJ has determined that a child is not engaged in substantial gainful activity and has a severe impairment or combination of impairments, the ALJ must determine whether the impairments meet, medically equal, or functionally equal a listed impairment. 20 C.F.R. § 416.924. As relevant, to functionally equal a listed impairment,[3] the child's impairments must result in (1) "marked" limitations in two of six specified domains of functioning; or (2) an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). The domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. *Id.* at (b)(1)(i)-(vi).

When considering whether a child has "marked" or "extreme" limitations in any domain, the ALJ must compare her functioning to the typical functioning of children her age who do not have impairments. 20 C.F.R. § 416.926a(f)(1). A child has an "extreme" limitation in a domain when her impairments interfere "very seriously" with her ability to independently initiate, sustain, or complete activities. *Id.* at (e)(3)(i). A child has a "marked" limitation in a domain when her impairments "seriously" interfere with the foregoing abilities. *Id.* at (e)(2)(1).

    b. **Evaluating a treating physician's opinion.**

A treating physician's opinion is entitled to special weight because he or she is "most able to provide a detailed, longitudinal picture" of a claimant's medical impairments and bring a perspective to the medical evidence that cannot be obtained from objective medical findings alone. *See* 20 C.F.R. § 416.927(c)(2); *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or

---

[3] Plaintiff does not challenge the ALJ's determination (AR 18) that Plaintiff did not meet or medically equal a listed impairment. (*See generally* JS.)

4

the ultimate issue of disability." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. *See* 20 C.F.R. § 416.927(c)(2).

If a treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. *See id*. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751 (internal quotation marks omitted).

Here, Plaintiff's treating physicians' opinions were contrary to the opinions of the testifying medical expert and the state agency physicians. (*See infra*.) Thus, the ALJ was required to state specific and legitimate reasons based on substantial evidence in the record before rejecting the treating physicians' opinions.

### 2. Background.

#### a. AVCC – August 2014 through September 2014.

In August 2014, an AVCC physician listed Plaintiff's primary diagnosis as migraine headache. (AR 413-14.) In September 2014, Plaintiff's mother reported that Plaintiff had a three-day headache. Plaintiff's mother further asserted that Plaintiff's headaches were increasing in frequency, possibly because of perfumes used by people at school. Dr. Round diagnosed Plaintiff with migraine and recommended that Plaintiff continue with her headache management plan. (AR 321-24.)

#### b. CHLA – November 2014 through May 2015

Plaintiff had multiple visits to the neurology clinic at Children's Hospital of Los Angeles ("CHLA") in 2014 and 2015. (AR 265-92.) Her CHLA treatment regimen included prophylactic medication (*e.g.*, amitriptyline and zonisamide), analgesics (*e.g.*, sumatriptan and ibuprofen), and supplements (MigreLief). (*See*

*generally id.*)  In November 2014, Plaintiff's mother reported that Plaintiff was having headaches almost every day, up from three times a week or month.  (AR 265-66.)  The headaches were 6/10 to 10/10 in intensity, with nausea, photophobia, and phonophobia.  (AR 265.)  Plaintiff's mother reported that on three occasions in August and October of 2014, Plaintiff had to go to the emergency room for migraine.[4]  She reported that medication stopped Plaintiff's headaches on those visits.  (*Id.*)  The neurologist noted that a March 2012 CT brain scan was normal and an April 2013 brain MRI was unremarkable.  (AR 267.)  The neurologist prescribed a prophylactic medication.  As well, the neurologist instructed Plaintiff's mother not to give Plaintiff ibuprofen more than three times per week, as a precaution against rebound headaches.  (AR 267, 268.)

In March 2015, Plaintiff's mother reported that the prophylactic medication had not improved her headaches, but Tylenol with codeine resolved them.  (AR 270.)  She further reported that Plaintiff had been taken out of school for excessive absences.  Plaintiff was getting "A's" in her at-home classes.  (*Id.*)  The neurologist diagnosed Plaintiff with "long standing headaches which are consistent with chronic migraine with medication overuse headache."  (AR 273.)  The neurologist prescribed a different prophylactic medication.  (AR 274.)

In April 2015, Plaintiff's mother reported that Plaintiff's headaches had become less frequent but more severe.  (AR 278.)  The neurologist diagnosed Plaintiff with chronic migraine and medication overuse headache.  (AR 278-79.)  In a later April 2015 visit, Plaintiff's mother reported that Plaintiff's headaches had decreased and that sumatriptan took away the pain.  The neurologist diagnosed Plaintiff with chronic migraine, not intractable.  (AR 280-84.)

In May 2015, Plaintiff's mother again reported that Plaintiff's headaches had decreased, from nine the previous month to seven in the instant month.  She again

---

[4] The record does not include treatment notes from Plaintiff's ER visits.  (*See* AR 264-420.)

reported that sumatriptan took away the pain.  The neurologist diagnosed Plaintiff with chronic migraine, not intractable and without migrainosus.  (AR 286-90.)  The neurologist noted, "[Plaintiff's] headaches are now episodic and she is no longer overusing acute abortive medicaitons [*sic*]."  (AR 289.)

### c.   AVCC– June 2015 through December 2016

Between June 2015 and November 2017, Plaintiff's AVCC physicians kept Plaintiff on a regimen of prophylactic medication and analgesics.  (*See generally* AR 293-334, 354-55, 360-420.)  In June 2015, Plaintiff's mother reported to Dr. Round that Plaintiff's migraines were improving and she was down to nine headaches per month.  (AR 311.)  In July 2015, Plaintiff's mother again reported a decrease in Plaintiff's headache frequency.  Dr. Kim noted that Plaintiff's behavior was socially appropriate for her age, and she had good motor functioning and language skills.  (AR 306-10.)

In November 2015, Plaintiff's mother reported that Plaintiff's headaches had increased to near-daily frequency despite her medication.  Dr. Round diagnosed Plaintiff with migraine headache without aura and ordered labwork.  (AR 300-03.)  In December 2015, Plaintiff's mother reported that Plaintiff had headaches most days of the week and none of her medication seemed to abate the headaches.  (AR 296.)  Nonetheless, Dr. Round noted that Plaintiff played outside regularly, watched TV or played video games daily, and was able to perform self-care such as brushing her teeth.  (AR 297.)  Plaintiff's labwork was unremarkable.  (AR 298-99.)

In January 2016, Plaintiff's mother reported that despite her medication, Plaintiff continued to have frequent headaches.  (AR 335.)  Dr. Kim diagnosed Plaintiff with migraine without aura, not intractable, and without status migrainosus.  (AR 336.)  He changed Plaintiff's medication.  (*Id.*)

In August 2016, Plaintiff reported that she had 11 to 13 headaches per month and benefitted only slightly from her medication.  Dr. Kim again diagnosed

Plaintiff with migraine without aura, not intractable, and without status migrainosus.  He changed Plaintiff's medication and recommended that Plaintiff see a neurologist again.  (AR 354-55.)  Dr. Kim noted, "Mother also asked me to fill the diability [sic] form as she being [sic] extremely disabled category.  Mother stated she can't do anything and [is] totally impaired during headaches, and required the aid for total care during headaches.  This is based on the verbal history from mother."  (AR 355.)

In September 2016, Plaintiff's mother reported that Plaintiff was having two to three migraines per week.  Plaintiff could not do anything while having migraines, which significantly interfered with her school attendance.  (AR 375, 378.)  Dr. Round referred Plaintiff to a pediatric neurologist.  (AR 378.)  Plaintiff's mother requested that Dr. Round complete a disability form.  (*Id.*)  Dr. Round told Plaintiff's mother that it might be "difficult" because, *inter alia*, Plaintiff was "well-functioning" when she was not having headaches.  (*Id.*)

In December 2016, at Plaintiff's request, Dr. Round referred Plaintiff to an acupuncturist and a chiropractor.  (AR 373.)  The record does not indicate that Plaintiff received treatment from either practitioner.  (*See general* AR 264-420.)

### d.     LLU – December 2016 through April 2017.

Plaintiff saw Dr. Gamil Fteeh in the pediatric neurology department at Loma Linda University ("LLU") in December 2016.  (AR 346.)  Dr. Fteeh diagnosed plaintiff with intractable migraine without aura and with status migrainosus.  (AR 347.)  He changed Plaintiff's medications, which again included prophylactic and analgesic medications.  (AR 346-47.)  In April 2017, Dr. Fteeh diagnosed Plaintiff with intractable migraine without aura and with status migrainosus.  Dr. Fteeh continued Plaintiff's medications and counseled Plaintiff regarding headache management (*e.g.*, drinking plenty of fluids and maintaining a regular sleep schedule).  (AR 343-45.)

///

### e. AVCC – July 2017 through November 2017

In July 2017, Plaintiff's mother reported that Plaintiff's migraines had decreased to 11 per month and she had no interim ER visits. (AR 365-69.) Dr. Round advised Plaintiff's mother against using opiates for pain control in minors. (*Id.*) He encouraged Plaintiff's mother that Plaintiff's functionality seemed to be improving with her current regimen. (*Id.*) In November 2017, Plaintiff's mother reported that Plaintiff's medication seemed to be less effective and her headache frequency had increased slightly. (AR 360.) Plaintiff reported no interim ER visits. (*Id.*) Dr. Round noted that Plaintiff played outside regularly and watched TV or played video games daily. (AR 361.)

In each visit to AVCC, CHLA, and LLU, Plaintiff's findings on physical examination were normal or unremarkable, including normal neurological, musculoskeletal, and mental findings. (*See generally* AR 264-420.) Plaintiff never presented with an ongoing migraine. (*See generally id.*)

### f. The opinions.

In August 2016, Dr. Kim opined that Plaintiff had extreme limitations in each of the six domains of functioning relevant to evaluating childhood disability. (AR 352-56.) With respect to each domain, Dr. Kim noted only, "Mother said she can't during migraine," or some variant thereof. (AR 352-56.)

In September 2016, Dr. Round opined that Plaintiff had marked limitations in the foregoing functioning domains. (AR 356-58.) Dr. Round noted that the limitations occurred during migraine episodes. (*Id.*) With regard to health and well-being, he stated, "[Plaintiff] complains of severe migraine headaches at least two days per week. Between episodes, [Plaintiff] has no limitations in function or self-care." (AR 358.)

In February and May 2016, the state agency physicians opined that plaintiff had "less than marked" limitations in health and well-being and no limitations in

///

any other domain. (AR 53-54, 63.) The testifying expert opined that Plaintiff had no limitations in any domain. (AR 40-41.)

### 3. Analysis.

#### a. Unsupported by the record as a whole.

After reviewing the medical record in detail (AR 20-22), the ALJ found that Dr. Kim's and Dr. Round's opinions were "unsupported by the record as a whole . . . ." (AR 22.) The ALJ reasoned, "[Plaintiff's] objective examinations are normal, she has only required conservative care, and she has experienced a reduction in frequency of headaches and overall symptom improvement." (*Id.*) These grounds were specific and legitimate reasons for rejecting the treating physicians' opinions. An ALJ may reject a treating physician's opinion on the basis that it is unsupported by objective medical evidence. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (explaining that ALJ can reasonably discount treating physician's opinion that is inadequately supported by clinical findings) (citing *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)). As well, an ALJ may give less weight to a treating physician's opinion on the ground that it is inconsistent with the record as a whole. *See* 20 C.F.R. § 416.927(c)(4) (the more consistent an opinion is with the record as a whole, the more weight it will be given).

Further, the ALJ supported his reasons with substantial evidence. As the ALJ asserted (AR 20-21, 22), Plaintiff's findings on examination were "routinely normal over the longitudinal record," and her laboratory testing and diagnostic imaging – which included a brain CAT scan and a brain MRI – revealed normal findings. Her migraine treatment consisted of non-opiate medications, supplements, and headache management, which could reasonably be characterized as conservative treatment. Moreover, as the ALJ emphasized (AR 21), Plaintiff experienced a significant reduction in the frequency of her migraines in 2015, when she was receiving regular neurology treatment at CHLA. Indeed, by May 2015, her

CHLA neurologist diagnosed her migraines as "episodic" and attributed them, in part, to overuse of pain medication.

The ALJ acknowledged, albeit implicitly, that Plaintiff's headaches increased in frequency after her CHLA treatment ended. (*See* AR 21 (noting that Plaintiff reported 11 to 19 headaches per month in December 2016).) But as the ALJ noted (AR 21, 22), (1) Plaintiff did not have any ER visits for migraines after 2014; (2) throughout her treatment, Dr. Round, Dr. Kim, and her CHLA neurologist(s) characterized her headaches as not intractable and without migrainosus;[5] and (3) in July 2017, Dr. Round reported an increase in Plaintiff's functionality. The Court notes as well that after 2014, Plaintiff did not report multi-day headaches to her treating physicians. Therefore, substantial evidence supported the ALJ's conclusion (AR 21) that overall, Plaintiff had a "positive response to the course of treatment."

In Plaintiff's view, the ALJ erred because a "proper summary" of the medical record would have demonstrated that Plaintiff "continued to experience severe, intractable headaches throughout the disability period." (JS at 3.) The ALJ discussed the evidence at length (*see* AR 20-22) and came to a different conclusion. "When the evidence before the ALJ is subject to more than one rational interpretation, [the court] must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

### b. Inconsistent with treatment notes.

The ALJ next found that Dr. Kim's and Dr. Round's opinions were not consistent with contemporaneous treatment notes. (AR 28.) An ALJ may reject a

---

[5] The ALJ did not explicitly refute Dr. Fteeh's 2017 diagnosis of Plaintiff's migraines as intractable and with migrainosus. (*See* AR 21.) Because the ALJ was entitled to interpret conflicting diagnoses of equal weight, **Error! Main Document Only.***see Thomas*, 278 F.3d at 956-57, and because substantial evidence supported his conclusion that Plaintiff's migraines were not intractable and without migrainosus, any error in failing to address Dr. Fteeh's diagnosis was harmless.

11

treating physician's opinion on such a basis. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009) (holding that conflict with treatment notes is specific and legitimate reason to reject treating physician's opinion); *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) ("A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider"). As the ALJ noted (AR 20-21), in August 2016, Dr. Kim characterized Plaintiff's migraines as not intractable and without migrainosus. And in September 2016, Dr. Round expressed reservations regarding a disability evaluation, stating that Plaintiff was "well-functioning" when she was not having migraines.

Therefore, it was not unreasonable for the ALJ to conclude that in assigning Plaintiff "extreme" and "marked" limitations in all areas of functioning, respectively, Dr. Kim and Dr. Round contradicted the contemporaneous treatment notes. That is, their notes indicated that Plaintiff's migraines were amenable to treatment and were not disabling overall.[6] *Compare* 20 C.F.R. § 416.926a(e)-(f). The fact that Plaintiff interprets the physicians' treatment notes differently (*see* JS at 5) does not mean the ALJ's interpretation of that evidence was irrational. *See Batson*, *supra*.

### c. Inconsistent with Plaintiff's reported activities.

The ALJ next found that Dr. Kim's and Dr. Round's opinions were inconsistent with Plaintiff's reported daily activities, which "demonstrate functioning consistent with a child her age." (AR 22.) A conflict between a treating physician's opinion and the claimant's daily activities "may justify rejecting a treating provider's opinion." *Ghanim*, 763 F.3d at 1162 (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600-02 (9th Cir. 1999) (considering

---

[6] In fact, Dr. Round's opinion arguably hedges against a disability finding by explicitly stating that between migraine episodes, Plaintiff had no limitations in function or self-care.

inconsistency between treating physician's opinion and claimant's daily activities as specific and legitimate reason to discount treating physician's opinion)). The ALJ cited Dr. Round's reports that Plaintiff had been getting A's in school, regularly played outside and watched TV or played videogames, and engaged in self-care. (AR 21; *see* AR 22.) The ALJ reasonably concluded the treating physicians' opinions conflicted with these reported activities, which indicated that Plaintiff's overall functioning was consistent with that of children her age. *See* 20 C.F.R. § 416.926a(f)(1).

### d. Based on subjective complaints.

The ALJ discounted Dr. Kim's and Dr. Round's opinions on the ground that they were based on "subjective complaints." (AR 23.) An opinion of disability that is "premised to a large extent upon the claimant's own accounts of his symptoms and limitations" may be disregarded where those complaints have been properly discounted. *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989). It follows, therefore, that an ALJ may disregard a physician's opinion that is based largely on a third party's properly-discounted observations of the claimant's symptoms and limitations. Here, both Dr. Kim and Dr. Round explicitly noted, in their opinions and their contemporaneous treatment notes, that their opinions were based on Plaintiff's mother's reports. As the ALJ provided sufficient reasons for discounting Plaintiff's mother's statements (*see* discussion, *infra*), he permissibly discounted the treating physicians' opinions on this ground as well.

In sum, the ALJ provided specific, legitimate reasons supported by substantial evidence for discounting Dr. Kim's and Dr. Round's opinions. Accordingly, Plaintiff is not entitled to relief on Issue One.

### B. Plaintiff's Mother's Statements (Issue Two).

In Issue Two, Plaintiff contends that the ALJ did not provide clear and convincing reasons to reject her mother's testimony regarding her symptoms. (JS at 13-16.)

1. **Legal Standard.**

The Social Security regulations provide that in determining disability in children, the Administration may use statements from nonmedical sources regarding "the effects of [the child's] impairment(s) on [the child's] activities and how [the child] function[s] on a day-to-day basis." 20 C.F.R. § 416.924a(2). Such nonmedical sources may include parents and other caregivers. *Id.* at (2)(i). In turn, the Ninth Circuit has repeatedly held that "[d]escriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir.1993) (ALJ must consider lay testimony concerning claimant's ability to work); *Stout v. Commissioner, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006) (same). This principle applies equally to sworn hearing testimony of witnesses (*see Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)) as well as to unsworn statements and letters of friends and relatives (*see Schneider v. Commissioner of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000)).

As a general rule, if the ALJ chooses to reject such evidence from other sources, he may not do so without comment (*Nguyen*, 100 F.3d at 1467) and he must provide "reasons that are germane to each witness" (*Dodrill*, 12 F.3d at 919; *see also Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996) (dismissing witness testimony simply because witness is family member not sufficiently germane to witness)). However, if the reviewing court can "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination," the reviewing court may find the error harmless. *Stout*, 454 F.3d at 1056.

2. **Background.**

At the June 2018 hearing, Plaintiff's mother testified as follows: Plaintiff had ten to twenty headaches per month. (AR 44.) On average, she had a headache

14

every other day. (AR 45.) As she got older, she got more headaches. (AR 44.) The headaches sometimes got better, but improvements only lasted two weeks. (*Id.*)

Plaintiff could only take her medication three times a week. (AR 45.) If a headache persisted, she had to go to her room. During a headache, she required blackout curtains in her room and silence throughout the whole house. She vomited and moaned. The headache could last anywhere from four hours to overnight. (AR 45-46.) After a headache, Plaintiff would be completely wiped out. (AR 46.) Her "headache hangover" could last a whole day. (*Id.*)

Plaintiff had missed doctor appointments because she couldn't travel when she had a migraine. (AR 44.) In second grade, she was told she could no longer attend school because of excessive absences, so she went to "home hospital school" – *i.e.*, online learning at home. (AR 44-45.) When she was not sick with headache, she was doing school work, even during school breaks and on weekends. (AR 45.) She never had a chance to hang out with friends, because she had migraines all the time. As well, she had no way of meeting people because she had hospital school. (AR 46.)

In written statements, Plaintiff's mother reported that Plaintiff had limitations in the following areas: communication; physical abilities such as walking and running; relationships with others; and taking care of her own needs. (AR 192-200.) She reported that Plaintiff had a headache between 11 and 21 days per month, with only ten days per month without headaches. (AR 213, 226.) The headaches lasted from four hours to a couple of days. (*Id.*) During a headache, Plaintiff suffered vomiting and loss of appetite, had to stay in a dark and silent room, and could not dress herself, brush her teeth, or perform any function other than lying down. (AR 215, 226.) Further, Plaintiff could not attend school because of her migraines. (AR 226.) Plaintiff's mother emphasized that the headaches were "debilitating." (*Id.*)

### 3. Analysis.

The ALJ found that Plaintiff's mother's statements "describe[d] limitations that were greater than expected based on [Plaintiff's] ongoing negative examination findings, documented system improvement with the treatment course, and [Plaintiff's] reported daily activities that are consistent with a child her age." (AR 23.) These reasons are germane to Plaintiff's mother, in that they do not purport to discount her testimony solely because she is a lay witness. Further, they are supported by substantial evidence.

First, Plaintiff's physical examination findings and other objective medical evidence were consistently normal or unremarkable. *See* discussion, *supra*. Second, the ALJ reasonably concluded, based on a review of the record, that Plaintiff had a positive response to treatment overall.[7] *See id.* Third, as discussed, Plaintiff's mother reported that Plaintiff was getting A's in hospital school, and Dr. Round reported that Plaintiff engaged in a variety of normal activities. These reports are inconsistent with Plaintiff's mother's claims regarding the debilitating effect of Plaintiff's headaches. If Plaintiff averaged one severe headache every other day (or more often) and had one "headache hangover" day per headache, she would effectively be out of commission every day of the month. It was not unreasonable for the ALJ to conclude that headaches of such claimed frequency and

///

---

[7] While the Court cannot affirm the Commissioner's decision on grounds upon which the ALJ did not rely in reaching his decision, *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 n.2 (9th Cir. 2008), the Court does not rely on a *post hoc* rationalization where it merely cites additional record support for a stated ground for the ALJ's decision, **Error! Main Document Only.***see Warre v. Commissioner*, 439 F.3d 1001, 1005 n.3 (9th Cir. 2006). In that regard, the Court notes that Plaintiff's mother's claim that Plaintiff got more headaches as she got older is inconsistent with her reports to Dr. Kim and Dr. Round, which indicated a decrease headache frequency overall.

///

severity were not consistent with getting A's in school and engaging in normal childhood activities.[8]

In sum, the ALJ provided sufficient reasons for discounting Plaintiff's mother's statements regarding Plaintiff's symptoms and limitations. Therefore, Plaintiff is not entitled to relief on Issue Two.

## ORDER

It is therefore ordered that Judgment be entered affirming the decision of the Commissioner of Social Security and dismissing this action with prejudice.

DATED: July 24, 2020

MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE

---

[8] As well, Plaintiff's mother's allegations regarding the overall disabling effect of Plaintiff's migraines were inconsistent with her statements regarding Plaintiff's functioning. As the ALJ noted in discussing the domains of functioning (AR 23-27), despite claiming limitations in each functioning domain, Plaintiff's mother reported that Plaintiff could engage in nearly every enumerated activity in the Administration's "Function Report – Child Age 6 to 12." *E.g.*, she reported that Plaintiff could read, add and subtract, print her name, complete homework and chores, make friends, ride a bike, operate video game controls, tie her shoes, and take a bath or shower without help. (AR 195-200.)